IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,              )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Criminal Action No. 08-10-JJF
                                        )
GERALD CROOKS                           )
                                        )
                    Defendant.          )

## GOVERNMENT'S POST-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its undersigned attorneys, and

hereby responds to Defendant's Motion to Suppress, and respectfully requests that this Court deny

the motion for the reasons that follow.

### INTRODUCTION

On January 22, 2008, the Grand Jury for the District of Delaware indicted the defendant,

Gerald Crooks, on one count of possession of a firearm by a felon, in violation of 18 U.S.C.

§ 922(g)(1). The charges stemmed from the defendant's arrest on November 13, 2007, in which a

loaded firearm and ammunition, along with approximately two ounces of marijuana, were found in

his vehicle following a traffic stop. On March 10, 2008, the defendant filed a Pre-trial Motion to

Suppress Physical Evidence and Statements, and on April 3, 2008, this Court held an evidentiary

hearing on this Motion.

### PROPOSED FINDINGS OF FACT

On November 13, 2008, Officer Justin Breslin of the New Castle County Police Department

conducted a traffic stop of the defendant's car because the Criminal Justice Information System

(CJIS) indicated that the vehicle's temporary registration had expired.   Evidentiary Hearing

Transcript (Tr) at 3-4. CJIS is a database that Officer Breslin accessed through a computer in his patrol vehicle. Tr. 5. If a registration is expired, then the top of the computer screen reads that the vehicle should not be on the street. Tr. 5. In addition, CJIS provides the issue and expiration dates of the registration. Tr. 5.

Officer Breslin ran the vehicle's temporary tag number in CJIS prior to the traffic stop, and CJIS indicated that the tag had expired on October 16, 2007. *Id.* The top of the screen, moreover, read that the vehicle "should be off the street." Tr. 38. Later that evening, in preparing his report, Officer Breslin again confirmed the CJIS reading which still displayed a October 16, 2007, expiration date. Tr 6-7. Officer Breslin testified that he was "100 percent" certain that CJIS listed the tag as expired at the time of the traffic stop. Tr. 8.

On March 20, 2008, Officer Breslin ran the temporary tag number again in preparation for this evidentiary hearing and saw that CJIS now indicated that the registration expired on November 15, 2007, meaning that the registration was actually valid at the time of the traffic stop. Tr. 8. After seeing this discrepancy, Officer Breslin went to the Delaware Department of Motor Vehicles and obtained the official registration transcript for the temporary tag, which also reflected that the registration expired on November 15, 2007, not October 16, 2007. Tr. 8.

Officer Breslin testified that he frequently runs tags as part of his patrol duties, and has observed a small error rate in CJIS. Tr. 6. He estimated, however, that the system is approximately 95 percent accurate. Tr. 6. Officer Breslin further stated that he does not typically rely on the handwritten expiration date that appears on the temporary tag itself because, in his experience, the expiration date is often altered. Tr. 40.

2

After conducting the traffic stop, Officer Breslin approached the car. The defendant was the driver, an adult female was in the front passenger seat, and the defendant's three-year-old child was in the back seat. Tr. 9. The defendant provided his drivers license and Officer Breslin checked the license in CJIS, which revealed that the defendant had three outstanding warrants for his arrest and had a suspended drivers license. Tr. 10; 28. As a result, Officer Breslin ordered the defendant out of the car and placed him under arrest. Tr. 10. At that time, the adult passenger and child were still in the car. Tr. 10.

Officer Breslin immediately asked the defendant whether there was anything in the vehicle that he needed to be aware of, and the defendant responded by stating that he had some "ounces," which he had sold, and that there were some bullets and a gun in the car. Tr. 11. Officer Breslin searched the car and found a blue backpack in the back seat. Inside the backpack was a loaded .38 caliber handgun, a bag of ammunition, and approximately two ounces of marijuana. Tr. 12. The backpack was found within arms reach of where the child had just been sitting, and within arms reach of the driver and passenger. Tr. 12-13.

Officer Breslin advised the defendant of his *Miranda* rights at the scene. Tr. 13. The defendant stated that he understood his rights and that he wanted to talk, after which they had a short conversation about how the defendant obtained the gun. Tr. 14. Officer Breslin next took the defendant back to police headquarters. Tr. 15.

Approximately three hours after the initial arrest, Officer Breslin conducted a second interview with the defendant at police headquarters. *See* Tr. 15; Gov't Ex. 1 & 2. Before any questioning, Officer Breslin read the defendant his *Miranda* rights for a second time. Tr. 18; Gov't Ex. 1 & 2. The defendant asked Officer Breslin about his right to an attorney, and Officer Breslin

3

emphasized that the defendant had a right to an attorney, and that if he wanted to assert that right, the interview would end. Tr. 19-20; Gov't Ex. 1 & 2. The defendant indicated verbally and by initialing a written *Miranda* form that he understood his rights, and initialed the written *Miranda* form confirming that he wished to talk to Officer Breslin. Tr. 22-23; *see also* Gov't Ex. 3. The defendant then gave a statement in which he described how he obtained the firearm, ammunition, and marijuana that was in the blue backpack. Tr. 23.

## ARGUMENT

The defendant contends that the police lacked probable cause to conduct the traffic stop of the defendant's vehicle, and further challenges the search that led to the discovery of the firearm, ammunition, and marijuana. The defendant also asks this Court to suppress statements made by the defendant. In light of the evidence presented at the suppression hearing, the defendant's motion should be denied.

### A.    *Officer Breslin Had Reasonable Suspicion to Conduct the Traffic Stop, and Developed Probable Cause For the Defendant's Arrest.*

To conduct a traffic stop, police need only reasonable suspicion of a traffic violation. *See United States v. Delfin-Colina*, 464 F.3d 392, 397-98 (3d Cir. 2006) (holding that "the *Terry* reasonable suspicion standard applies to routine traffic stops" such that "a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop"). Officer Breslin ran the vehicle's temporary registration number in the CJIS system, which listed the registration as expired. This information provided reasonable suspicion, if not probable cause, for a traffic stop.

4

In this case, there was an admitted mistake of fact as to the registration status of the vehicle. The CJIS system incorrectly reflected that the temporary registration had expired October 16, 2007, when in fact the tag was not expired at the time of the stop. This mistake does not, however, invalidate the stop. Rather, the Third Circuit has held that, in making a traffic stop:

> an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact "does not violate the Fourth Amendment."

*Delfin-Colina*, 464 F.3d at 396 (quoting *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir.2003)). In *Delfin-Colina*, the Third Circuit found that a Pennsylvania state trooper reasonably, but wrongly, believed that a pendant hanging from a driver's rear-view mirror violated section 4524(c) of the Pennsylvania Traffic Code, which prohibits the placement of objects from the inside rearview mirror in such a position as to materially obstruct, obscure or impair the driver's vision. *Id.* at 394 (citing 75 Pa. Cons. Stat. § 4524(c)). Nonetheless, because the trooper's belief that the pendant obstructed the driver's view was reasonable, the Third Circuit upheld the subsequent stop for the traffic violation.

Like the trooper in *Delfin-Colina*, Officer Breslin acted reasonably based on his reading of the CJIS system, which listed the vehicle's registration as expired. Although Officer Breslin was aware that the CJIS system had a small error rate for temporary tags, he estimated that the system is accurate approximately 95 percent of the time. Moreover, Officer Breslin testified that he does not generally rely on the handwritten expiration date for temporary tags because, in his experience, individuals often tamper with the registration information on the tag itself. Notwithstanding the fact that CJIS was apparently mistaken at the time of the stop, under the circumstances, it was certainly

5

reasonable for Officer Breslin to have relied on CJIS to justify the initial stop of the defendant's vehicle.

Once the traffic stop occurred, Officer Breslin obtained the defendant's driver's license and ran it through CJIS, which revealed that the defendant was wanted on three outstanding capiases and had a suspended drivers license. At that point, Officer Breslin had probable cause to arrest the defendant.

**B.**     ***The Physical Evidence Found During the Search of the Defendant's Vehicle Is Admissible.***

Immediately following a lawful custodial arrest of an occupant of an automobile, police may search the passenger compartment incident to arrest. *New York v. Belton*, 453 U.S. 454, 460 (1981). Any containers found within the passenger compartment may also be searched by police. *See id.* at 461 n.4 (noting that "containers" include "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as *luggage*, boxes, *bags*, clothing, and the like"(emphasis added)); *Government of Virgin Islands v. Rasool*, 657 F.2d 582, 589 (3d Cir. 1981) (applying *Belton* to find that a search of an opaque grocery bag found in the passenger compartment of a vehicle "must be upheld as a lawful search incident to a lawful custodial arrest").

Moreover, the police may conduct a search incident to arrest even if the occupants had already been placed into custody. *See Thornton v. United States*, 541 U.S. 615, 624 (2004) (upholding search incident to arrest where petitioner had already been arrested, handcuffed, and placed in the back of the patrol car prior to the search). The search of the backpack, which was located in the rear of the passenger compartment, was therefore justified as a search incident to the defendant's arrest.

6

**C.** *The Defendant's Post-Miranda Statements Are Admissible.*

The defendant also argues that this Court should suppress his statements while he was in custody because he was not informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Def. Memo at 3. He further contends that there was no "affirmative indication of understanding or voluntary waiver" of his *Miranda* rights, or alternatively, that the waiver was not knowing, intelligent, or voluntary. *Id.* at 4. The evidence presented at the suppression hearing, however, shows that the defendant was twice provided with the *Miranda* warnings, that he affirmatively indicated his understanding of these rights, and that he voluntarily decided to speak with Officer Breslin.

The Government acknowledges that when the defendant was first arrested, Officer Breslin asked him whether there was anything in the car before giving him *Miranda* warnings. As a result, the Government will not seek to introduce the defendant's initial statement regarding the marijuana and the presence of the gun as direct evidence at trial. The Government, moreover, does not plan to introduce the defendant's first post-*Miranda* statement made in the patrol vehicle immediately following the defendant's arrest. The Government respectfully submits, however, that the defendant's subsequent videotaped statement is admissible.

The admissibility of the videotaped statement should not be effected by the fact that Officer Breslin asked a single pre-*Miranda* question immediately following the defendant's arrest. *See Oregon v. Elstad,* 470 U.S. 298 (1985). In *Elstad*, the Supreme Court held:

> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though

7

> *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Id.* at 309. In *Missouri v. Seibert*, 542 U.S. 600 (2004), the Supreme Court recognized a narrow exception to the *Elstad* rule where police engage in a calculated, two-step interrogation technique designed to undermine *Miranda*. But Officer Breslin's question regarding the presence of contraband in the vehicle — a vehicle with an adult and child still inside — clearly was not the sort of calculated and systematic interrogation contemplated by *Seibert*, but rather falls on the *Elstad* side of the line. *See United States v. Naranjo*, 426 F.3d 221, 232 (3d Cir. 2005) ("[U]nless the agents deliberately withheld warnings, *Elstad* controls [the] *Miranda* claim.").

Moreover, *Seibert* held that, even if a deliberate two-step strategy is employed, a defendant's subsequent statements can still be admitted if "curative measures are taken before the post-warning statement is made" such as a change in setting, a substantial break in time, and fresh *Miranda* warnings "designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring).

After discovering the firearm and marijuana, Officer Breslin *Mirandized* the defendant at the scene, and had a short conversation with him about how he obtained the firearm and the marijuana. The videotaped interview occurred approximately three hours later and was accompanied by fresh *Miranda* warnings and took place in a new setting. As the videotape of the interview depicts, Officer Breslin carefully discussed the rights with the defendant to ensure he understood them, in particular, Officer Breslin emphasized that the defendant could assert his right to an attorney and explained that if the defendant wanted to exercise that right, the interview would not continue. *See* Gov't Ex. 1 &

8

2.  After considering his rights, the defendant ultimately decided to speak with Officer Breslin without an attorney present and signed a written *Miranda* waiver indicating that he understood his rights and wanted to talk. Gov't Ex. 3. Considering that Officer Breslin did not intentionally engage in a two-step interrogation technique, and given the curative measures taken, the defendant's videotaped statement should be admitted into evidence.

**D.    *Physical Evidence Should Not Be Suppressed Because of Any* Miranda *Violation***

It is well established that the "fruit of the poisonous tree" doctrine does not apply to physical evidence recovered as a result of a voluntary statement, even if that statement was taken in violation of *Miranda*. *United States v. Patane*, 542 U.S. 630, 636-37 (2004). Thus, even if there was an initial *Miranda* violation in this case, the defendant is not entitled to have any physical evidence suppressed as a result.

In *Patane*, officers went to the defendant's residence to investigate a violation of a restraining order and illegal possession of a firearm. *Id.* at 634-35. During the course of police questioning, the defendant told the officers where the firearm was located. Even though the Court found that *Miranda* was violated by the custodial interrogation of the defendant, the Court refused to suppress the firearm. *Id.* at 643-44; *see also United States v. DeSumma*, 272 F.3d 176, 180-81 (3d Cir. 2001) ("We hold that the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a voluntary statement obtained before *Miranda* warnings are issued. Thus, even though the defendant's seized gun was secured as a result of his non-*Mirandized* statement, it was properly admitted."). Therefore, even to the extent that the firearm, ammunition, and marijuana were found as a result of the defendant's initial pre-*Miranda* statement, that evidence should not be suppressed.

9

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny, the defendant's

Motion to Suppress Evidence.

> Respectfully submitted,
> COLM F. CONNOLLY
> UNITED STATES ATTORNEY
>
> BY:
> Ilana H. Eisenstein
> Assistant United States Attorney

Dated:  April 17, 2008

10